IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JAMES OLIVER., ) | |
| AIS #186094, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 09-00052-KD-N |
| ) | |
| JOHN CUMMINS, ) | |
| ) | |
| Respondent. ) | |

REPORT AND RECOMMENDATION

This is an action under 28 U.S.C. § 2254 by an Alabama inmate which has been referred for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 8 of the Rules Governing Section 2254 Cases.  Upon consideration of the petition (doc. 1), Respondent's Answer (doc. 7), Petitioner's Response (doc. 10), Respondent's Supplemental Answer (doc. 12) and all other pertinent portions of the record, it is recommended that the petition be denied and dismissed with prejudice.

1.      Background.

On October 5, 2005, the Monroe County Grand Jury indicted James Oliver ("Oliver"), the Petitioner herein, and charged him with second degree rape of a child between the ages of twelve and sixteen years, in violation of Ala. Code § 13A-6-62(a)(1).[1]  Oliver pleaded not guilty and was tried before a jury on April 13, 2007, Monroe County Circuit Court Judge W.J. Causey presiding.  Following the presentation

---

[1] Oliver complains that he was indicted for the same offense involving the same twelve year old victim in 2004 but does not dispute the fact that the indictment issued in 2004 was dismissed.

of the evidence and the court's oral charge, the jury returned a verdict finding Oliver guilty of second degree rape as charged in the indictment. The court conducted a sentencing hearing on June 13, 2007 and Oliver was sentenced to a term of life in prison. (Doc. 7-4)

Oliver appealed both his conviction and sentence to the Alabama Court of Criminal Appeals in case CR-06-2010. The following issues were raised by Oliver on appeals:

1. His life sentence was illegal as exceeding the jurisdiction of the trial court and the trial judge erroneously amended the sentence during the pendency of the appeal.

2. The trial judge committed reversible error by denying Oliver's motion to suppress evidence from blood samples that Oliver alleged were taken involuntarily.

3. The trial court failed to conduct a hearing outside the presence of the jury on the admissibility of DNA evidence.

4. The trial court erroneously admitted DNA evidence without a proper predicate or proof of chain of custody.

5. The prosecutor erroneously elicited testimony from Oliver about prior felony offenses.

6. The trial court erroneously refused to instruct the jury on the lesser included offense of second degree sexual abuse.

(Doc. 7-2). On October 24, 2008, the Alabama Court of Criminal Appeals affirmed Oliver's conviction and sentence by memorandum opinion in case CR-06-2010. (Doc. 7-4).[2]

---

[2]The Alabama Court of Criminal Appeals held that Oliver had admitted his two prior felony convictions during his testimony in open court prior to his counsel's objection and his life sentence was mandated by the Habitual Felony Offender Act. The court also held that Oliver's

Oliver took no other action on his appeal. He filed no application for rehearing in the Alabama Court of Criminal Appeals and did not petition the Alabama Supreme Court for discretionary review by writ of certiorari. Consequently, the Alabama Court of Criminal Appeals issued a Certificate of Judgment in CR-06-2010 on November 12, 2008, pursuant to Rule 41 of the Alabama Rules of Appellate Procedure. (Doc. 7-5).

To date, Oliver has filed no other post-conviction challenges to this conviction and sentence. Instead, he filed his §2254 petition (doc. 1) in this Court on January 28, 2009. In support of his petition, Oliver alleges that: (1) his conviction was based on evidence obtained pursuant to an unconstitutional search and seizure; (2) his conviction was

---

sentence was not modified during his appeal but merely corrected a clerical error in the initial sentencing order pursuant to Ala.R.Crim.P. 29 to clarify Oliver's admitted status as an habitual offender. (Doc. 7-4 at pp. 2-5). As to Oliver's second issue on appeal, the Alabama Court of Criminal Appeals found that the trial court did not abuse its discretion in denying the motion to suppress the evidence related to the blood specimen taken from him on the grounds that it was voluntarily given by Oliver because the trial court had the opportunity to observe the witnesses who testified during the suppression hearing and judge their credibility. (Doc. 7-4 at pp. 5-9). As to Oliver's third claim on appeal, the Alabama Court of Criminal Appeals reviewed the transcript and held that Oliver was not denied a hearing regarding the admissibility of the DNA evidence outside the presence of the jury at the appropriate time during the trial and that the interchange between the trial judge and Oliver's counsel did not give rise to the degree of prejudice which would constitute grounds for a mistrial. (Doc. 7-4 at pp. 9-15). As to Oliver's fourth claim, the Alabama Court of Criminal Appeals held that the State sufficiently demonstrated a reasonable probability that the blood sample was that taken from Oliver and that the trial court properly allowed the evidence of Oliver's blood sample to be presented to the jury because any question about proper handling of the specimen went to the weight rather than the admissibility of the evidence. (Doc. 7-4 at pp. 15-20). As to Oliver's fifth claim on appeal, the Alabama Court of Criminal Appeals held that the issue was not preserved for appeal because the only objection made to Oliver's testimony about his two prior felony convictions elicited by the prosecutor during his cross-examination was on the grounds of "their remoteness in time" and not on the grounds that the testimony was elicited in violation of Ala.R.Evid. 404(b). (Doc. 7-4 at pp. 20-21. Alabama Court of Criminal Appeals held that Oliver had failed to preserve his final claim for appellate review, namely the contention that the trial court erred by failing to charge the jury on a sexual abuse in the second degree as a lesser-included offense of rape in the second degree, because he asserted no specific grounds during trial for his objection to the jury charge. (Doc. 7-4 at pp. 21-23).

obtained in violation of his constitutional protection from double jeopardy; and (3) the trial court lacked jurisdiction to amend his sentence during the pendency of his appeal. *See* Petition (doc. 1 at 7-8).

Respondent asserts that all of Oliver's claims are precluded by the doctrine of procedural default because Oliver failed to fully exhaust available state remedies when he had the opportunity to do so. Answer (Doc. 7 at 2). Specifically, Respondent asserts that none of the claims raised by Oliver in his § 2254 petition have been presented to the Alabama Supreme Court, the state court of last resort, by appropriate pleading and, as a result, Oliver's claims are now precluded and his petition should be denied and dismissed with prejudice.

In response to the court's show cause order (doc. 9) petitioner contends that his procedural default should be excused because his case "is a 'manifest miscarriage of justice' and Petitioner not only is 'Actually Innocent' but any further filings in State Courts would be futile." (Doc. 10 at 1). Following his arguments about the merits of his claim, Oliver asserts that "28 U.S.C. § 2254(B) is broad enough to encompass the issues claimed and it should be plain that 'there is either an absence of available State corrective process (Justice), circumstances rendering such process ineffective to protect the rights of the prisoner'." (Doc. 10 at 4). Oliver then makes the general allegation that "fairness does not operate or prevail in Alabama Courts." *Id.* Oliver then asserts that he gave the state courts a "fair" opportunity to act by appealing to the Alabama Court of Criminal Appeals and then relied on his counsel's opinion that there was no need to request a rehearing or certiorari from the Alabama Supreme Court. (Doc. 10 at 5). Oliver argues

4

that he "is imprisoned because he 'refused' to plead guilty and also refused to have case # 1:06cv146-U.S.D.S.D [a 1983 civil action he claims to have filed while incarcerated in the Monroe County Jail and about which he claims Respondent knew in 2004] dropped or dismissed."[3]  (Doc. 10 at 6).  With respect to Oliver's claim of innocence, he points solely to the victim's examining physician's report which stated that "PHYSICAL EVIDENCE, AT THIS TIME, NEITHER CONFIRMS NOR NEGATES SEXUAL ASSAULT." (Doc. 10 at Exh. D).

2. <u>Discussion</u>.

   (a) <u>Statute of Limitations</u>.

The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) provides, in pertinent part:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.

28 U.S.C. § 2244(d)(1)(A).  This is Oliver's first petition for habeas relief under 28 U.S.C. § 2254 and it was timely filed within the one year statute of limitations inasmuch

---

[3] The records in this Court indicate that James Oliver filed an action pursuant to 42 U.S.C. § 1983 against Monroe County District Attorney Thomas Chapman, Monroe County Asst. District Attorney Larry Eichman, Monroe County Police Chief Randolf Munnerlin, Detective Omer West and Detective Mitch Stuckey, namely Civil Action No. 06-00146-WS-B.  This lawsuit, however, was not filed until March 9, 2006 and was dismissed prior to service of process on December 30, 2008 for failure to state a claim upon which relief can be granted.

as Oliver's conviction and sentence became final on direct appeal when the Certificate of Judgment issued on November 12, 2008. Oliver signed his petition on January 21, 2009[4] and it was filed with the Clerk of this Court on January 28, 2009.

    (b).    <u>Exhaustion and Procedural Default</u>.

It is well settled that a state prisoner must exhaust his state remedies prior to challenging his conviction in a habeas petition filed in federal court. *See* 28 U.S.C. §§ 2254(b)(1) and (c); <u>Woodford v. Ngo</u>, 548 U.S. 81, 92 (2006). The Eleventh Circuit has succinctly stated the rule as follows:

> Generally, a habeas corpus petitioner cannot raise a claim in federal court if he did not first exhaust the claim in state court. 28 U.S.C. § 2254(b)(1)(A); <u>Kelley v. Sec'y for the Dep't of Corrs</u>., 377 F.3d 1317, 1343 (11th Cir.2004). A federal claim is exhausted only if fairly presented to the state courts. <u>McNair v. Campbell</u>, 416 F.3d 1291, 1302 (11th Cir.2005) (citing Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 512 (1971)). A petitioner has not fairly presented his claim to the state court if such claim is presented for the first and only time in a procedural context where the merits are not considered. <u>Castille v. Peoples</u>, 489 U.S. 346, 351, 109 S.Ct. 1056, 1060 (1989).

<u>Cargile v. Secretary, Department Of Corrections,</u> 2009 WL 3365954 (11th Cir. , October 21, 2009) (slip opinion)

Section 2254(b)(1) specifically provides that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State." The Supreme Court has made clear that the rationale of the

---

[4]Oliver dated his signature "2008" but the Respondent acknowledges that, based upon the content of the petition, it is clear that it was signed in January 2009.

exhaustion requirement centers on the proper relationship between state and federal courts:

> "This rule of comity reduces friction between the state and federal court systems by avoiding the 'unseem[liness]' of a federal district court's overturning a state-court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) (alteration in original). A state prisoner is generally barred from obtaining federal habeas relief unless the prisoner has properly presented his or her claims through one "complete round of the State's established appellate review process." *Ibid.* In practical terms, the law of habeas, like administrative law, requires proper exhaustion, and we have described this feature of habeas law as follows: "To ... 'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has ***properly*** exhausted those remedies ...." *Id.*, at 848, 119 S.Ct. 1728 (citation omitted; emphasis in original).

Woodford, 548 U.S. at 92. A petitioner's failure to exhaust his state remedies results in the "preclusion of review in the federal court." *Id*. "Thus, if state-court remedies are no longer available because the prisoner failed to comply with the deadline for seeking state-court review or for taking an appeal . . .the petitioner procedurally defaulted those claims [and] generally is barred from asserting those claims in a federal habeas proceeding." *Id.* at 93, *citing* Gray v. Netherland, 518 U.S. 152, 162 (1996); Coleman v. Thompson, 501 U.S. 722, 744-51 (1991). *See also* Banks v. Dretke, 540 U.S. 668, 690 (2004)("To pursue habeas corpus relief in federal court, Banks first had to exhaust 'the remedies available in the courts of the State'."), *quoting* Rose v. Lundy, 455 U.S. 509, 520 (1982); Doorbal v. Department of Corrections, 572 F.3d 1222, 1229 (11th Cir. 2009)("A state prisoner may not seek federal habeas review unless he has 'exhausted the

7

remedies available in the courts of the State'[because he] must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition'."), *quoting* Cone v. Bell, – U.S. –, 129 S.Ct. 1769, 1781 (2009) and O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Pearson v. Secretary, Dept. of Corrections, 273 Fed.Appx. 847, 849-50 (2008)("The exhaustion doctrine requires the petitioner to 'fairly present' his federal claims to the state courts in a manner to alert them that the ruling under review violated a federal constitutional right."), *quoting* Duncan v. Henry, 513 U.S. 364, 365-66 (1995).

In Alabama, the state court of last resort is the Supreme Court of Alabama. *See* Dill v. Holt, 371 F.3d 1301, 1303 (11th Cir. 2004)("Under Alabama law, 'one complete round' of review [] includes: (1) filing a petition for certiorari in state circuit court; (2) appealing the denial of that petition to the Alabama Court of Criminal Appeals; (3) petitioning the Alabama Court of Criminal Appeals for rehearing; and (4) seeking discretionary review in the Alabama supreme Court. . ."); Ala.R.App.P. 4, 49 40; Kennedy v. Hopper, 156 F.3d 1143, 1145 (11th Cir. 1998) ("[I]n all criminal cases-Alabama law effectively requires a petitioner to preserve any federal constitutional error by objection at trial, and to pursue that assertion of error on direct appeal."). Oliver, however, failed to invoke the review of the Supreme Court of Alabama and, consequently, his claims are unexhausted. O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999)("Section 2254(c) provides that a habeas petitioner 'shall not be deemed to have exhausted the remedies available in the courts of the State ... if he has the right under the law of the State to raise, by any available procedure, the question presented'."). Because

Oliver did not exhaust these claims by seeking review of the decision of the Alabama Court of Criminal Appeals by the Supreme Court of Alabama, these claims are also barred under the doctrine of procedural default. O'Sullivan, 526 U.S. at 848 ("[Petitioner's] failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims), *citing* Coleman v. Thompson, 501 U.S. 722, 731-32 (1991); Engle v. Isaac, 456 U.S. 107, 125-26 (1982).

In addition to the above, the "double jeopardy" claim was raised by Oliver for the first time in his habeas petition. The State, in the first instance, has correctly asserted that Oliver has failed to plead a valid double jeopardy violation.[5] However, even if Oliver had stated a valid claim, such claim would be precluded under Alabama procedural rules as a claim which should have been raised at trial and on direct appeal. *See* Ala.R.Crim.P. 32.2(a)(3) and (5).[6] Because this double jeopardy claim is presented for the first time in a

---

[5]Oliver's double jeopardy claim is predicated on the fact that he was indicted in 2004 and again in 2005. The first indictment was dismissed prior to the issuance of the second indictment. Oliver was not, however, tried on the first indictment and was not, therefore, either acquitted or convicted on the first indictment. It is well settled that:

> "[T]he Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense."

State v. Haynes, 3 So.3d 272, 275 (Ala.Crim.App. 2008), *quoting* Heard v. State, 999 So.2d 992, 1006 (Ala. 2007), *in turn quoting* United States v. Halper, 490 U.S. 435, 440 (1989)., *overruled on other grounds*, Hudson v. United States, 522 U.S. 93 (1997). Inasmuch as Oliver was neither acquitted or convicted based on the first indictment, his conviction on the second indictment does not constitute a violation of double jeopardy.

[6]Certain double jeopardy claims are recognized under Alabama law as jurisdictional claims that escape the preclusionary provisions under Ala.R.Crim.P. 32 but Oliver's claim is not

§ 2254 petition, this court can determine that, even though the claim is unexhausted in state court, the claim would be precluded under state procedural rules and is, therefore, precluded under the doctrine of procedural default.  Coleman, *supra*, 501 U.S. at 735 n.1; Snowden v. Singletary, 135 F.3d 732, 736 (11th Cir. 1998)("when it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief,").  *See also* Martin v. Secretary, Dept. of Corrections, 262 Fed. Appx. 990, 993 (11th Cir. 2008)(" If the petitioner never raised the claim in state court, and it is obvious that the unexhausted claim would be procedurally barred in state court, 'the exhaustion requirement and procedural default principles combine to mandate dismissal'."), *quoting* Bailey v. Nagle, 172 F.3d 1299, 1303 (11th Cir. 1999).

  (c) Cause and Prejudice.

Oliver argues that his procedural default should be excused because his "case is a 'manifest miscarriage of justice' and petitioner not only is 'Actually Innocent' but any further filings in State Courts would be futile."  (Doc. 10 at p. 1).  The Eleventh Circuit

---

one of these.  Double jeopardy claims reviewed by the Alabama appellate courts as jurisdictional, and thus not subject to waiver, are generally "simultaneous convictions for both a greater and a lesser included offense." Staughn v. State, 876 So.2d 492, 507-08 (Ala.Crim.App. 2003), *comparing* Rolling v. State, 673 So.2d 812 (Ala.Crim.App. 1995)(A jurisdictional claim involving simultaneous convictions for felony murder and reckless manslaughter arising form the death of the same victim) and Harris v. State, 563 So.2d 9 (Ala.Crim.App. 1989)(A non-jurisdictional, and therefore waivable, claim involving a four count indictment for possession of different items of obscene material). Oliver's assertion of double jeopardy is subject to preclusion under Alabama's post-conviction procedural rules because it does not assert a claim of multiple convictions.

10

has held that "before a federal habeas court may consider the merits of a procedurally defaulted claim, a petitioner "must demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Philmore v. McNeil, — F.3d — , 2009 WL 2181682, * 12 (11th Cir., July 23, 2009).  The Court has further opined, in part, as follows:

> We "may not consider claims that have been defaulted in state court pursuant to an adequate and independent state procedural rule, unless the petitioner can show cause for the default and resulting prejudice, or a fundamental miscarriage of justice." Zeigler v. Crosby, 345 F.3d 1300, 1304 (11th Cir.2003) (per curiam) (quotation marks and citation omitted). A claim also would be "procedurally defaulted if the petitioner fails to raise the claim in state court and it is clear from state law that any future attempts at exhaustion would be futile." Id. (quotation marks and citation omitted). We defer to the state court's findings regarding procedural default. *See id.*

Ferguson v. Secretary for the Depart. of Corrections, — F.3d — , 2009 WL 2605405, *5 (11th Cir. Aug. 26, 2009).

The Eleventh Circuit has also elaborated upon the limited circumstances in which a procedurally defaulted claim may support habeas relief:

> A claim is procedurally defaulted if it has not been exhausted in state court and would now be barred under state procedural rules. Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir.2001). A procedurally defaulted claim can support federal habeas relief in only two narrow situations. First, the petitioner may demonstrate cause and prejudice. Cause exists if there was "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). Such external impediments include evidence that could not reasonably have been discovered in time to comply with the rule; interference by state officials that made compliance impossible; and ineffective assistance of counsel at a stage where the petitioner had a right to counsel. *Id.* In addition to cause, the petitioner must also show prejudice: that "there is at least a reasonable

11

probability that the result of the proceeding would have been different" had the constitutional violation not occurred. Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir.2003).

Mize v. Hall, 532 F.3d 1184, 1190 (11th Cir. 2008).  As applied to Oliver's petition, he has failed to establish the existence of the requisite "cause" for his procedural default. Specifically, Oliver has failed to allege that any external impediment prevented him from complying with Alabama's procedural rules and exhausting his claims by seeking review by the Alabama Supreme Court.  Although Oliver asserts that he did not seek rehearing by the Alabama Court of Criminal Appeals or certiorari by the Alabama Supreme Court because his counsel said "I do not see any possibility of having the case reversed" (Doc. 10 at Exh. A), he does not allege that he received ineffective assistance of counsel and, instead, simply expresses his general lack of trust in the Alabama courts at all levels.[7]

---

[7]Oliver has never raised an ineffective assistance of counsel claim in the state court.  The Supreme Court discussed the necessity of raising such a claim first in the state court as follows:

> [W]e think that the exhaustion doctrine, which is "principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings," Rose v. Lundy, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982), generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default. The question whether there is cause for a procedural default does not pose any occasion for applying the exhaustion doctrine when the federal habeas court can adjudicate the question of cause-a question of federal law-without deciding an independent and unexhausted constitutional claim on the merits. But if a petitioner could raise his ineffective assistance claim for the first time on federal habeas in order to show cause for a procedural default, the federal habeas court would find itself in the anomalous position of adjudicating an unexhausted constitutional claim for which state court review might still be available. The principle of comity that underlies the exhaustion doctrine would be ill served by a rule that allowed a federal district court "to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," Darr v. Burford, 339 U.S. 200, 204, 70 S.Ct. 587, 590, 94 L.Ed. 761 (1950), and that holds true whether an ineffective assistance claim is asserted as cause for a procedural default or denominated as an

12

Consequently, Oliver has not made the requisite showing to prove "cause" sufficient to justify a procedural default. *See* Whitfield v. Mitchem, ___F.Supp.2d ____, 2008 WL 4493302, *1 (M.D.Ala.,October 01, 2008) ("Whitfield argues that cause exists to excuse his failure to file an application for a writ of certiorari in the Alabama Supreme Court because he believes that petitioning that court for discretionary review would have been futile. Whitfield's assumption that the Alabama Supreme Court would have rejected his claims does not establish cause for his default."). Further, because Oliver has failed to show cause for the procedural default, there is no need not to address whether he showed prejudice. Dowling v. Secretary for Dept. of Corrections, 275 Fed.Appx. 846, 848 (11th Cir. 2008) *citing* McCleskey v. Zant, 499 U.S. 467, 502 (1991).

The sole remaining circumstance under which a procedurally defaulted claim may support habeas review involves the existence of a "fundamental miscarriage of justice." In this regard the Eleventh Circuit has held:

> Even without cause and prejudice, the procedural default of a constitutional claim may be excused if enforcing the default would result in a fundamental miscarriage of justice. This exception applies if the petitioner can show that, in light of new evidence, it is probable that no reasonable juror would have convicted him. Schlup v. Delo, 513 U.S. 298, 327, 115 S.Ct. 851, 867, 130 L.Ed.2d 808 (1995). By making this showing of actual innocence, the petitioner may overcome the procedural default and obtain federal review of the constitutional claim. Id.

---

independent ground for habeas relief.

Murray v. Carrier, 477 U.S. 478, 488-89 (1986); Seibert v. Allen, 455 F.3d 1269, 1272 (11th Cir. 2006)("The existence of sufficient "cause" to justify a procedural default ordinarily turns on whether the prisoner can show that some "objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.")

13

Mizel, 532 F.3d at 1190.  Oliver's reliance on this exception is, however, unavailing. Oliver's assertion of "manifest injustice" is not based upon any "new evidence" which demonstrates actual innocence.  See Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir.2001) (explaining that the actual innocence exception is "exceedingly narrow in scope" and requires proof of actual innocence, not legal innocence).  The only evidence submitted by Oliver in support of his request to excuse his procedural default is the statement by the physician who conducted an examination of the twelve year old victim and concluded that the "PHYSICAL EVIDENCE, AT THIS TIME, NEITHER CONFIRMS NOR NEGATES SEXUAL ASSAULT."  (Doc. 10 at Exh. D).  This evidence is not "new" and does not constitute evidence of Oliver's  "actual innocence." Oliver has thus failed to overcome his procedural default and is, therefore, not entitled to obtain federal review of the claims he now raises in his § 2254 petition.

"Actual innocence" may be a gateway through which a petitioner may avoid application of procedural bars and have the underlying constitutional claims addressed in order to avoid a miscarriage of justice.  Herrerra v. Collins, 506 U.S. 390, 403-05 (1992). This exception, however, requires actual as opposed to legal innocence.  Calderon v. Thompson, 523 U.S. 538, 559 (1998).  "Actual innocence" means factual innocence, not mere legal insufficiency.  Bousley v. United States, 523 U.S. 614, 623-24 (1998).  In other words:

> The meaning of actual innocence . . . does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty. It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather

14

> the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do. Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.

Schlup v. Delo, 513 U.S. 298, 329 (1995). A petitioner must "show that it is more likely than not that 'no reasonable juror' would have convicted him [and] [i]t must be presumed that a reasonable juror would consider fairly all of the evidence presented [and] would conscientiously obey the instructions of the trial court requiring proof beyond a reasonable doubt." *Id*. In addition, a claim of actual innocence requires some new evidence be presented, not merely a reassertion of a defense rejected at trial. In order "'to be credible,' a claim of actual innocence must be based on reliable evidence **not presented at trial'**." Fortenberry v. Haley, 297 F.3d 1213, 1222 (11th Cir. 2002), *quoting* Calderon, 523 U.S. at 559, and Schlup, 513 U.S. at 324 (emphasis added). The standard for establishing actual innocence is a "demanding" standard which requires a showing of new and reliable evidence that, in essence, would require the petitioner's acquittal and is, therefore, met only in "extraordinary" circumstances. House v. Bell, 547 U.S. 518, 538 (2006). "A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt-or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt." *Id*. Put another way, the standard requires that, to make this rare showing the allegations of constitutional error must be supported "with new reliable evidence – whether it be exculpatory scientific evidence,

15

trustworthy eyewitness accounts, or critical evidence – that was not presented at trial." Schlup, 513 U.S. at 324. As stated above, Oliver's assertion of "actual innocence" is not based upon any "new evidence" which demonstrates actual innocence. The evidence Oliver relies upon was presented at his trial and does not constitute evidence of Oliver's "actual innocence." Oliver has thus failed to overcome his procedural default on grounds of "actual innocence" and is, therefore, not entitled to obtain federal review of the claims he now raises in his § 2254 petition.

(d)   Futility.

Oliver also alleges that it would have been futile to appeal further to the Alabama Supreme Court. Oliver's futility claim is, however, also unavailing. The United States Supreme Court has declared:

> [T]he futility of presenting an objection to the state courts cannot alone constitute cause for a failure to object . . . If a defendant perceives a constitutional claim and believes it may find favor in the federal courts, he may not bypass the state courts simply because he thinks they will be unsympathetic to the claim. Even a state court that has previously rejected a constitutional argument may decide, upon reflection, that the contention is valid. Allowing criminal defendants to deprive the state courts of this opportunity would contradict the principles supporting Sykes.

Engle v. Isaac, 456 U.S. 107, 130 (1982)(footnotes omitted), *citing*, Wainwright v. Sykes, 433 U.S. 72, 87 (1977); Myers v. Washington, 646 F.2d 355, 364 (9th Cir. 1981)("futility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time'."). Oliver's assertion of futility is essentially nothing more than his personal perception of futility. Such a non-objective perception of futility does not excuse the exhaustion requirements of 28 U.S.C. § 2254. *See* Sundar v. I.N.S., 328 F.3d 1320, 1325 (11th Cir. 2003)("[P]erceived futility is no exception to the exhaustion

requirement contained in 28 U.S.C. § 2254."), *citing* Engle v. Isaac, 456 U.S. 107, 130 (1982)(held that a state prisoner with a claim he wants to bring to federal court 'may not bypass the state courts simply because he thinks they will be unsympathetic to the claim').

Oliver has thus failed to overcome his procedural default on grounds of "futility" and is, therefore, not entitled to obtain federal review of the claims he now raises in his § 2254 petition.

## CONCLUSION

For the reasons stated above, it is recommended that the habeas petition filed by James Oliver be denied and the action dismissed with prejudice on the grounds of that the claims asserted therein are unexhausted because they were not presented to the Supreme Court of Alabama, the state court of last resort, and are now precluded from review by the Alabama courts and this Court under the doctrine of procedural default.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**Done** this 28th day of October, 2009.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL
RIGHTS AND RESPONSIBILITIES FOLLOWING
RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1.      **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  <u>Failure to do so will bar a de novo</u> determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  <u>See 28 U.S.C. § 636(b)(1)©; Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc)</u>.  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recomme<u>ndation should be reviewed de novo</u> and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

        A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

        **Done** this 28th day of October, 2009.

                                        /s/ Katherine P. Nelson                
                                        UNITED STATES MAGISTRATE JUDGE